Good morning, and may it please the Court, Jia Kim appearing on behalf of Appellant Christopher Boutin, I'd like to reserve two minutes for rebuttal. This Court should order suppression of the evidence recovered from Mr. Boutin's digital devices because the warrant under which those digital devices was initially authorized to be seized and searched was so lacking in probable cause as to preclude the officer's good faith reliance on it. And as the Supreme Court has made clear, a search warrant, as distinguished from an arrest warrant, serves to safeguard a person's interests in the privacy of his home and his possessions. And of course, the probable cause standard requires a showing of a fair probability that either contraband or evidence of a crime, and here we're talking about digital evidence, will be found in a particular place. The warrant affidavit here was fatally deficient in two respects. First of all, it did not provide a reasonable basis on which one could infer that digital evidence, if it ever existed, was present at the time of the search. And second, it did not provide a nexus or connection between that digital evidence and the Irvine residence that was proposed to be searched. And taking the first point, so it's important to keep in mind that what the focus of Mr. Boutin's challenge is to the search for digital evidence or records in digital form. And within the warrant affidavit, although there was, you know, substantial information regarding an investigation of a possible SORNA violation, there was very little to show that Mr. Boutin had been in recent possession of a digital device. Aside, there was certainly no direct evidence, despite the surveillance that was conducted, that anyone had seen him with the device. There was no indirect evidence such as, you know, a subscriber, being a subscriber to a wireless or internet account, information of that nature. There was, the only piece of evidence in the affidavit was evidence that nearly a year before, Mr. Boutin had posted, apparently posted, photographs to a Facebook account under his name. And the officer who made out the affidavit had seen that about 10 months, I believe, prior to the warrant affidavit. However, this information was definitely stale. The lapse of time cannot be justified by recourse to child pornography cases, where a different sort of analysis applies because of the collector profile, the fact that child pornography is both illegal and difficult to come by, and therefore there has been expert opinion in multiple cases that this court has credited that people who possess and distribute and receive child pornography tend to hold onto those collections for a long period of time, perhaps exceeding the time period in this case. But why can't, I mean, why can't the magistrate issuing the warrant rely on what seems like a fairly in the United States in 2022? Given that we know that somebody had some sort of device a year ago, the probability that he has become a Luddite and, like, adopted a technology-free lifestyle in the next year is low enough that there's probable cause to think that he still has the device. Why isn't that sort of inference permissible? Well, I think, first of all, there's not sufficient information about the device usage in the prior year. There wasn't information that that was linked to his personal address at the time, as opposed to, say, a work address, a public address. So I would say we can't necessarily assume that in 10 months, 12 months before, that usage was from a personal device. And I think it's different compared to other sorts of offenses, a SORNA violation that, while assuming that someone did have this device, it would be creating, say, a trail of their violation behavior. But I don't think the SORNA violation conduct in itself necessarily generates digital evidence. So unlike the cases about child pornography or extortion conducted over the Internet or, you know, digital upskirt photos taken in the supermarket, the offense itself here doesn't necessarily create that. And I think looking towards the out-of-circuit, the Griffith case from the D.C. Circuit, and the Mora case, those courts have declined to assume that people necessarily possess these items. Go ahead. Just to be clear about what the nature of your objection is, if the warrant affidavit here had included a line, you know, from one of the investigators that said, you know, I staked out the apartment and I saw him leaving the apartment, you know, holding his phone, and so that's the phone we want to get. Would you have any further objection at that point? Would that be okay? I believe that that probably would be okay because unlike in the Griffith and Mora cases, there is case-specific evidence tying Mr. Wooten, this particular defendant, and this particular place to digital devices, as opposed to a general assumption that such devices are possessed. So, for instance, the affidavit, the warrant seeks to search his home and, you know, his car and his digital devices. In the case of the home and the car, certainly there's no assumption that he possesses such items. The warrant is careful to substantiate its allegations that, you know, he does have a car. It's registered here. It's of this make. He does reside in this particular location in Irvine. So I don't think a lesser, you know, in the affidavit, the digital devices are included as part of the premises, a premises to be searched. And I don't think a lesser showing should be made for those items, especially since the Supreme Court in, you know, at least as far back as Raleigh, California, has said that digital devices are not just a species of a larger container. There is something both quantitatively and qualitatively different about modern digital devices. Ms. Kim, let's get here to what the lower court did. As I understand it, the district court held a hearing. There wasn't any testimony. And the court assumed that the warrant lacked probable cause but found that the good faith exception applied. Why wouldn't, why shouldn't we agree with that? Why doesn't the good faith exception apply here? I think the district court's decision sort of falls into the same reasoning, assuming that the digital devices existed. You know, there are some points in the transcript where the district court refers to this being a cell phone. The devices here were not cell phones. And, in fact, it does not appear that any cell phone was found. But, you know, one of the good faith, you know, factors is a bare-bones warrant lacking in probable cause. So it is kind of a sliding scale between lack of probable cause and lack of probable cause sufficient to defeat good faith reliance. But, again, I think it's that point about not that there is a chain of inferences that had to be made. And here, I think the key leap was made by resort to the officer's training and experience, which necessarily just simply assumes the existence of these devices based on, he says something at ER 248, given how many records are generated digitally these days. And, you know, without that, there was not, and, you know, the officers knew that that Facebook information was not recent. They didn't seek the warrant at that time based simply on that information. They did further surveillance. But there was no updating of the digital usage information in that warrant affidavit. So I think for that reason, the fact that is, as in the Weber case, that the key leap was made by resort to this sort of boilerplate language regarding device possession and habits, that, as in Weber, means that good faith can't be relied on. Do you want to reserve the rest of your time? Yes, Your Honor. And what we'll do, Madam Clerk, if we could give her two minutes on rebuttal. Thank you, Ms. Kim. We'll see you in a little bit. Mr. Fowler. Good morning, Your Honor. May it please the Court, Charles Fowler for the United States. The search warrant affidavit here established probable cause to seize the defendant's hard drive, or at least, as the district court ruled, the officers relied in good faith on the warrant's authorization to seize the hard drive. I think the fundamental starting point here is that no one disputes that the affidavit established probable cause to believe that the defendant had in his home evidence of stolen violations. And the affidavit then detailed specific categories of records that were relevant to the elements of the offense that the defendant was likely to have at his home, evidence of things like travel, residence, employment, and so forth. From there, the warrant then established the places within the home, the sort of containers within the home, where it was reasonable to expect that those specific enumerated records would be found, and among those containers, of course, were digital devices. The warrant provided, first, expert testimony about how stolen violators were likely to store relevant evidence. That was the testimony about how these types of records are often stored digitally on computers, cell phones, etc. That testimony was both bolstered by the sort of common-sense inference that vital records like this are often stored digitally, as well as a case-specific fact, which was that the defendant himself was known to have posted information online about a year earlier. And so, all of that together, I think, easily establishes probable cause to believe that the records would be there in the home. And then, as with any other search warrant, the officers were authorized to look, once they were in the home, in any space, any container, including digital devices, where the relevant information was likely to be. May I ask you, Mr. Fowler, is it a common investigatory practice in SORNA cases to look for electronic devices in the way that was done here? I don't actually know the answer to that question, Your Honor. I would imagine that it is common because of the nature of the elements. It would be important for the government to establish a history of residence and a history of travel. And the reason that is, is that the conduct that's actually criminalized by the violation is not only a failure to register, but also a failure to update a registration. And the statutes that outline the obligations to update a registration, that's at 34 U.S.C. 209-13C, require a person who has to register to go appear in person within three days of any change in status of his employment, of his residence, school. And I think those are the main ones. And so it would be important for the government to develop this history of travel information, residence information, employment, to be able to pinpoint all of the points at which the defendant was required to update a registration. And what would you say to the idea, which I think is on some level motivating the argument that he's making, that at this point, at the point that you did this search, right, you have a lot of evidence that he's living in Southern California. He's obviously moved from North Carolina. It seems like you're pretty close, if not over the line, of having enough to convict him already. And one inference that a person could draw looking at this is that in looking at the electronic devices, like sure, you might find some evidence of where he was when, but the much more valuable thing that you're going to get from that is, given his history, you think you might find child pornography, as indeed you did. Now, under Wren, it's fine for you to conduct a pretextual search, but one might think that that was what was really going on here. Can you address that? Sure. Well, for one thing, I think there's no rule, of course, precluding the government from issuing or seeking investigative process, even if it perhaps is aware of facts that would support a conviction already, because it's the government's burden to prove its case beyond a reasonable doubt. It's the government's responsibility to investigate thoroughly to ensure that there aren't facts out there that would contradict perhaps the facts that are known to the government at the time it seeks the investigative process. And there's no claim in this case that the war was pretextual. And beyond that, I think the full scope of the offense conduct is more than his simply moving to California from North Carolina and having an obligation to register there. There are defenses that could be raised with regard to knowledge, with regard to something in the warrant, for example, was past registrations. If there were efforts by the defendant to have registered in the past that were reflected in his records that were not in the databases, the law enforcement query, for example, that would be highly relevant, something the government would want to know if it was out there. So I do think in addition, of course, to there being no claim that the warrant was actually a pretext to investigate a child pornography offense, I mean, I think it was a valid and sensible law enforcement tactic here to seek the warrant. Counsel, on which device was the child pornography first seen, which precipitated then getting the second search warrant? The child pornography was on a Seagate hard drive, which at the time the warrant was executed was connected to a laptop computer. When the officers executed the warrant, there was a couch in the living room, which the defendant's mother established is where the defendant slept. His personal effects like his wallet and ID were sitting on a table there next to a laptop with his photograph and name on it, and the hard drive was connected to that. So certainly I think that's relevant in particular to the officer's good faith in relying on the warrant's authorization to seize digital devices, because it certainly seemed from that perspective that that was a device to an officer there in the home at the time, that that's a device reasonably likely to contain the kinds of records that the officers were looking for. So in the little bit of time I have left, I just want to touch on the Griffith-Mora line of cases, which I think are what really animates the theory that the defense is raised here, and go back to where I started, which is that this case is fundamentally different from those cases because here, officers were looking for specific enumerated records relevant to sort of violations, and the warrant established probable cause to look in the home for those things, and the digital devices that they might encounter in the home were likely containers for that kind of evidence, and the warrant went to great length to underscore that. In Griffith, in contrast, the warrant established no particular types of documents that the officers were after. The cell phone itself was the evidence they were looking for, and therefore it made sense to require specific probable cause that a cell phone would be at the home, and of course for all the reasons that court said, the affidavit there, the court concluded, fell short, but this is a very different kind of case for the reasons I've stated, and therefore the government submits that the affidavit here was sufficient. Certainly, the officers acted in good faith in seizing the hard drive that had the child pornography on it. Mr. Fowler, I assume, or maybe you could confirm, we've got the secondary issue of the conditions of supervised release. Does the government agree that these conditions need to be, the written conditions need to be revised to be consistent with the oral pronouncement? Yes, Your Honor, and to clarify what's in the briefing on that, as to standard condition 14, the government would concede that since that was not a condition in the general order at the time the judgment was pronounced, or one of the ones enumerated in the guidelines, it is not part of the sentence, and that the oral pronouncement controls. I would just note that under 3583.2, the district court could, of course, impose that later on petition of the government or probation, but I would agree that it's not part of the sentence. All right, thank you. All right, thank you, Mr. Fowler. Ms. Kim, you have two minutes. Thank you. I'd like to touch on the point raised by the government likening digital devices to more traditional types of containers, and saying that this is akin to searching containers that would typically be found in a house. I think the Supreme Court specifically rejected that rationale in Riley. Now, Riley wasn't about a warrant. It was about searches incident to arrest, but one of the arguments raised by the state of California in Riley was that this was no different than other items like a wallet or a purse or an address book that might be incident to arrest. And the Supreme Court rejected that argument, saying that they are similar just as a ride on horseback is similar to a flight to the moon. They both take you from point A to point B, but otherwise they're so fundamentally dissimilar that you need some different rationale for the digital devices. And again, that's because of not only the vast storage capacity of such devices, but also the pervasiveness of what devices in terms of the privacy intrusion, the picture of one's life that can be generated by wholesale searches of browser history, the apps on one's device, financial statements, medical information, the advent of cloud computing that I think the Supreme Court rightly said puts more information at one's access in a digital device than would be found in a typical search of a home. But those I mean, I take that point. And those are all reasons to be to be concerned potentially about searches of electronic devices. But it doesn't seem tailored. It doesn't seem to link up with the argument that you're making here, because your position is that as long as they had better evidence that he in fact had a cell phone or other devices, it would have been perfectly fine to search for them. So what is it about the argument that you're making that has to do with that concern about all the information on the devices? I think the point I'm trying to make is that if the evidence to be sought for is digital records of residency, travel, and the like, which I agree would be relevant to a SORNA violation. However, because of the special privacy concerns raised by digital devices, it cannot be justified as saying this is just like searching any file cabinet that we come across in the home for bank statements or similar evidence. And I see I'm over my time. Thank you very much, Ms. Kim. Thank you both for your argument and briefing today. Very helpful. This matter is submitted.
judges: OWENS, MILLER, Christensen